**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GRIMALDI DEEP SEA S.p.A.,

    Plaintiff,

vs.                                            Case No. 3:24-cv-562-MMH-SJH

SSA ATLANTIC, LLC,

    Defendant.
_____/

**O R D E R**

**THIS CAUSE** is before the Court on Defendant SSA Atlantic, LLC's Motion to Dismiss Amended Complaint (Doc. 24; Motion), filed April 24, 2025. On May 15, 2025, Plaintiff, Grimaldi Deep Sea S.p.A. (Grimaldi), filed its Memorandum in Opposition to Defendants Motion to Dismiss (Doc. 31; Response). Accordingly, the Motion is ripe for consideration.

**I.   Background**[1]

On June 3, 2020, the M/V Hoegh Xiamen (the Vessel), a cargo ship, was berthed at the Blount Island Marine Terminal in Jacksonville, Florida. See

---

[1] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint (Doc. 22), filed on April 10, 2025, as true, consider the allegations in the light most favorable to Plaintiff, Grimaldi Deep Sea S.p.A., and accept all reasonable inferences that can be drawn from such allegations. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint and may well differ from those that can ultimately be proved.

Amended Complaint ¶ 8. The Vessel was time chartered to Grimaldi.[2] Id. ¶ 3. Prior to the Vessel's arrival in Jacksonville, Grimaldi contracted with Defendant, SSA Atlantic, LLC (SSA), for stevedoring services. Id. ¶ 18. As the stevedore, SSA was responsible for loading approximately 1,500 used vehicles onto the Vessel for international transport. Id. ¶¶ 15, 17, 18. When the parties entered into the contract, Grimaldi provided SSA with instructions on how to complete the loading operations, including procedures for disconnecting batteries in used vehicles. Id. ¶ 19. Specifically, SSA was to remove the negative cable from its battery post and cover the exposed part with a battery cap or wrap the disconnected battery cable with tape. Id. ¶¶ 20–22. The purpose of these procedures was to reduce the risk of fires caused by used vehicles. Id. ¶ 23.

On June 4, 2025, shortly after the loading operations were completed, a fire broke out on the Vessel. Id. ¶¶ 38, 49–50. The Vessel's crew attempted to extinguish the fire until a team of firefighters from the Jacksonville Fire and Rescue Department (JFRD) arrived. Id. ¶¶ 58–62, 64. While JFRD crew were on board the Vessel, an explosion occurred, causing extensive injuries to many of the firefighters. Id. ¶ 71. After eight days of firefighting efforts, the U.S. Coast Guard declared that the fire had been extinguished. Id. ¶ 72. Ultimately, many

---

[2] A time charter does not involve transfer of possession or control of a vessel; the owner of the vessel fully equips and maintains the vessel and retains responsibility for it. See Walker v. Braus, 995 F.2d 77, 81 (5th Cir. 1993).

of the vehicles on the Vessel were damaged in the fire, and the Vessel itself was declared a total loss. Id. ¶¶ 73–74.

Eleven firefighters who were injured in the explosion on the Vessel sued multiple defendants, including both Grimaldi and SSA. Id. ¶ 83. Shortly before trial, the firefighter plaintiffs settled their claims against SSA and Grimaldi. Id. Grimaldi also faced claims for loss or damage to the vehicles that were on board the Vessel and claims from the Vessel's owner. Id. ¶¶ 100, 101–103. Grimaldi ultimately settled these claims as well. Id.

Grimaldi now brings a breach of contract action against SSA, seeking to recover "contribution and/or indemnity" for the expenses Grimaldi incurred in defending against and settling the claims asserted against it. See id. ¶¶ 104, 105. According to Grimaldi, SSA failed to properly disconnect numerous batteries, secure disconnected cables, and cap the battery posts in vehicles loaded aboard the Vessel. Id. ¶¶ 29, 32. Grimaldi contends that the fire was caused, in whole or in part, by SSA's failure to properly load, stow, and secure the cargo in a workmanlike manner and in accordance with the stevedoring contract. Id. ¶ 108.

## II. Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see

also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## III.  Discussion

In the Amended Complaint, Grimaldi brings one claim for breach of contract and/or breach of implied warranty of workmanlike performance (Warranty) against SSA. See Amended Complaint ¶¶ 105–109. In the Motion, SSA seeks dismissal of the Amended Complaint, arguing, amongst other things, that Grimaldi, as a time charterer, cannot avail itself of the Warranty.[3] See Motion at 20–22. As discussed below, while the Warranty is implied in the contract between Grimaldi and SSA, Grimaldi does not have a contractual right to indemnification under the Warranty. Because Grimaldi cannot recover the

---

[3] Among its other arguments, SSA contends that the Amended Complaint is due to be dismissed because Grimaldi failed to perfect service of process within 90 days of initiating this action. See Motion at 12–16. It is undisputed that Grimaldi failed to properly serve SSA within 90 days as required by Rule 4(m) of the Federal Rules of Civil Procedure (Rule(s)). See Motion at 12; Response at 4. However, on February 21, 2025, the Court extended the deadline for Grimaldi to effect and file proof of proper service on SSA. See Order (Doc. 11) (extending the deadline to March 21, 2025). Grimaldi complied with this court-ordered deadline. See Return of Service (Doc. 12), filed on March 3, 2025. As such, the Amended Complaint is not due to be dismissed for failure to serve process in accordance with Rule 4(m). See Rule 4(m); Horenkamp v. Van Winkle and Co., 402 F. 3d 1129, 1132 (11th Cir. 2005) (holding that "Rule 4(m) grants discretion to the district court to extend time for service of process even in the absence of a showing of good cause."); Henderson v. U.S., 517 U.S. 654, 663 (1996) (noting that complaints are not due to be dismissed if served "within such additional time as the court may allow.").

only damages it seeks, Grimaldi's claim for breach of contract fails to state a cause of action and must be dismissed.

To adequately allege a claim for breach of contract, a plaintiff must allege the existence of 1) a valid contract, 2) a material breach, and 3) damages. See Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1249 (11th Cir. 2005). In the Amended Complaint, Grimaldi pleads both (1) the existence of a valid contract between itself and SSA and (2) SSA's breach of that contract. See Amended Complaint ¶¶ 18, 29. But in alleging its damages resulting from SSA's breach, Grimaldi seeks only "contribution and/or indemnity from SSA" for settlement payments and litigation expenses it incurred in defending itself against claims brought by the firefighters, the vehicle owners, and the Vessel's owner. See id. ¶¶ 99–104. Grimaldi alleges no other damages apart from indemnification for claims asserted by other parties. See id. Yet, the contract between Grimaldi and SSA does not expressly provide for a right to indemnification. See Exhibit A (Doc. 22-1) at 2–3, filed on April 10, 2025. As such, whether Grimaldi states a claim for relief depends on whether it has an implied right to indemnity under the contract.

Under Ryan Stevedor. Co. v. Pan-Atl. Steam. Corp., 350 U.S. 124 (1956), maritime service contracts include "the implied promise to perform those services with reasonable care, skill, and safety." See Vierling v. Celebrity Cruises, Inc., 339 F.3d 1309, 1315 (11th Cir. 2003). A breach of this Warranty

can give rise to a contractual right to indemnity. See, e.g., id. at 1320 (holding that a shipowner was entitled to indemnity if the trier of fact found that the port authority breached its warranty of workmanlike performance and that the breach caused the shipowner's injury). But it does not always. See, e.g., Smith & Kelly Co. v. S/S Concordia TADJ, 718 F.2d 1022, 1028 (11th Cir. 1983) (declining to extend Ryan indemnity to controversies involving seamen injured at sea); Agrico Chem. Co. v. M/V Ben W. Martin, 664 F.2d 85, 92 (5th Cir. 1981) ("The duty of workmanlike performance arises out of the stevedoring contract, but it does not automatically imply that the stevedore owes the owner indemnity against all liability under all circumstances."). "The Ryan doctrine thus includes two facets: an implied undertaking by a stevedore to render workmanlike performance and the stevedore's duty to indemnify the owner for liability arising out if its breach of the duty." See Agrico Chem. Co., 664 F.2d at 93.

Ryan's indemnity doctrine is a judicial creation that was "intended to ease the shipowner's burden of absolute liability stemming from the doctrine of unseaworthiness." See Campbell Indus., Inc. v. Offshore Logistics Int'l, Inc., 816 F.2d 1401, 1404 (9th Cir. 1987). Under the doctrine of unseaworthiness, a shipowner was held strictly liable to longshoremen who were injured due to the vessel's unseaworthy condition. See Smith & Kelly Co., 718 F.2d at 1025. To mitigate the potential for unfairness created by this doctrine, under Ryan,

shipowners were permitted to procure indemnity from an independent contractor whose activities caused the vessel's unseaworthiness. See id. The Court reasoned that liability in such cases "should fall on the party best situated to adopt preventative measures and thereby reduce the likelihood of injury." See id. (citing Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 324 (1964)).

Following Ryan, courts began to extend its indemnity principle to new factual scenarios, applying it beyond just contracts involving stevedores and longshoremen. See id. at 1026 (collecting cases). However, this expansion "began to ebb when, in 1972," Congress amended the Longshoremen's Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (LHWCA). See Smith & Kelly Co., 718 F.2d at 1026. In doing so, Congress abrogated Ryan, prohibiting longshoremen from bringing seaworthiness suits against vessel owners and prohibiting vessel owners from collecting indemnity from stevedores based on the Warranty. See id. Since then, courts have been reluctant to extend Ryan indemnity to new factual situations. See, e.g., id. at 1028 (declining to extend Ryan indemnity to controversies involving seamen injured at sea); Gator Marine Serv. Towing, Inc. v. J. Ray McDermott & Co., 651 F.2d 1096, 1100 (5th Cir. 1981) (describing the Ryan doctrine as "withered" and declining to extend

it to disputes between vessels and stevedores over damaged cargo).[4]

Here, SSA contracted with Grimaldi to provide stevedoring services on the Vessel. See Amended Complaint ¶ 18. As such, SSA had a duty to perform these services with "reasonable care, skill, and safety." See Vierling, 339 F.3d at 1315. To the extent it failed to do so, SSA breached the warranty of workmanlike performance implied in every maritime service contract. As such, Grimaldi can pursue a breach of contract claim based on a breach of this implied warranty, but a breach of the Warranty does not automatically entitle Grimaldi to indemnification under Ryan. Rather, Grimaldi is not entitled to Ryan indemnity because this case falls far "beyond those controversies involving the special rules governing the obligations and liability of shipowners which necessitated [Ryan indemnity] and justify its application." See In re Dearborn Marine Serv., Inc., 499 F.2d 263, 287 (5th Cir. 1974) (internal quotation marks omitted). First, Grimaldi was the time charterer of the Vessel, not the owner. See Amended Complaint ¶ 3. A time charter does not involve transfer of possession or control of a vessel; instead, the owner of the vessel fully equips and maintains the vessel and retains responsibility for it. See Walker v. Braus, 995 F.2d 77, 81 (5th Cir. 1993). No obligation to provide a seaworthy vessel is

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

imposed upon a time charter who assumes no operational control of a vessel. See Stranahan v. A/S Atlantica & Tinfos Papirfabrik, 521 F.2d 700, 703 (9th Cir. 1975). Consequently, "the policy reasons behind judicial creation of the implied warranty on behalf of the shipowner are absent where a time-charterer is involved." Id. As such, a time charterer, like Grimaldi, does not have an implied right to indemnity against a stevedore under the Warranty.[5] See id.

Second, unlike Ryan and its progeny, many of the claims for which Grimaldi seeks indemnity for relate to property damage, not personal injuries. See Amended Complaint ¶¶ 100, 102. Even if Grimaldi could recover indemnity under the Warranty as a time charterer, Grimaldi is not entitled to Ryan indemnity for these types of claims. See Gator Marine Serv. Towing, Inc., 651 F.2d at 1100 ("Disputes between vessels and stevedores over damaged cargo are best accommodated by a straightforward application of the usual maritime comparative fault system"); Cont'l Grain Co. v. Puerto Rico Mar. Shipping Auth., 972 F.2d 426, 439 (1st Cir. 1992) ("[W]e deem it improvident to apply the warranty liability created by Ryan to property damage claims against

---

[5] The Court notes that the Fifth Circuit has held that a time charterer who was sued directly by a libellant could receive the benefit of Ryan indemnity. See D/S Ove Skou v. Hebert, 365 F.2d 341, 352 (1966). However, this decision was rendered before Congress amended the LHWCA in 1972 and before the courts, including the Fifth Circuit, receded from extending Ryan indemnity "beyond those controversies involving the special rules governing the obligations and liability of shipowners which necessitated its formulation and justify its application." In re Dearborn Marine Serv., Inc., 499 F.2d at 287 (internal quotation marks omitted).

stevedoring contractors"). As a result, Grimaldi is not entitled to Ryan indemnity for claims stemming from damage to the vehicles loaded on board the Vessel or from damage to the Vessel itself.

For similar reasons, even if Grimaldi could recover Ryan indemnity as a time charterer, Grimaldi is not entitled to indemnification for the firefighters' personal injury claims. Unlike Ryan and its progeny, this case does not stem from a typical pier-side accident. And the doctrine of unseaworthiness does not apply where, as here, maritime rescuers board a vessel with knowledge of and the specific intent to address the vessel's unseaworthy condition. Compare McDaniel v. the M/B Lisholt, 180 F. Supp. 24, 26–27 (S.D.N.Y. 1959) (holding that a fireman was not entitled to a warranty of seaworthiness because he was not engaged in work traditionally done by seamen and entered the vessel only after it was obviously unseaworthy), aff'd sub nom. McDaniel v. The Lisholt, 282 F.2d 816 (2d Cir. 1960); with Complaint of Garda Marine, Inc., No. 88-2282-CIVHIGHSMITH, 1992 WL 321213, at *9 (S.D. Fla. Apr. 23, 1992) (holding that the warranty of seaworthiness applied to first responders because they were unaware of the ship's unseaworthy condition and did not enter the vessel because of its unseaworthy condition), aff'd sub nom. In re Garda Marine, 9 F.3d 1558 (11th Cir. 1993). Notably, the firefighters directly sued the Vessel's owner, as well as Grimaldi and the contractors involved in loading the vehicles onto the Vessel, including SSA. See Jolly et al. v. Hoegh Autoliners Shipping

AS et al., No. 3:20-cv-1150-MMH-MCR (M.D. Fla.). Indeed, the firefighters sued each party for its respective negligence in causing the explosion. See id. No party faced strict liability for the firefighters' injuries. As such, the original justification for Ryan indemnity does not apply here, and Ryan indemnity is therefore inappropriate.[6]

Moreover, application of comparative fault in these circumstances best advances the goals underpinning the Ryan doctrine. "Ryan was in large part aimed at enhancing safety by placing liability on the party best able to avoid accidents and encouraging that party to take precautionary measures." See Smith & Kelly Co., 718 F.2d at 1028. Where a fire accelerates out of control on a vessel and necessitates aid from first responders, all parties involved are in a position to mitigate or prevent potential injuries to the first responders. For example, the vessel's owner can ensure that the ship is properly equipped with safety supplies and reasonable systems and protections for fires, the time charterer can implement proper loading procedures and policies designed to reduce the risk of fires, and the stevedore can exercise reasonable care in

---

[6] The Court notes that Ryan indemnity may be appropriate in some circumstances where the doctrine of unseaworthiness does not apply. See Vierling, 339 F.3d at 1319 (extending the Ryan indemnity doctrine to injuries sustained by passengers while boarding a ship because a shipowner owes a high duty of care to passengers as a common carrier and it would make no sense to apply Ryan indemnity to seamen but not to passengers who are hurt as a result of the same accident). However, here, unlike in Vierling, there is no risk of having "different rules for different people who are injured under the same circumstances." See id. The circumstances under which a first responder enters a vessel to address an unseaworthy condition are vastly different from those of a seaman or passenger who enter a ship without even the slightest knowledge of the dangers on board.

loading cargo on the vessel. As such "[a]voidance of future accidents can be best achieved by interesting [all] parties in greater care." See id. at 1029, 1030 (also noting that "[t]he clear trend in maritime cases is to reject all-or-nothing or other arbitrary allotments of liability in favor of a system that divides damages on the basis of the relative degree of fault of the parties.").

For all of the foregoing reasons, Grimaldi is not entitled to Ryan indemnity under the implied warranty of workmanlike performance. Because Grimaldi pleads no other damages, Grimaldi's breach of contract claim fails to state a cause of action and must be dismissed.

Accordingly, it is

**ORDERED:**

1. Defendant SSA Atlantic, LLC's Motion to Dismiss Amended Complaint (Doc. 24) is **GRANTED**.

2. Plaintiff's Amended Complaint (Doc. 22) is **DISMISSED**.

3. The Clerk of the Court is **directed** to terminate all pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 17th day of October 2025.

MARCIA MORALES HOWARD
United States District Judge

Lc35
Copies to:
Counsel of Record